**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 28 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ALLIED PROFESSIONALS
INSURANCE COMPANY, A Risk
Retention Group, Inc., an Arizona
corporation,

        Plaintiff-Appellant,

 v.

MICHAEL SCOTT ANGLESEY, M.D.;
ELISEO GUTIERREZ; VERONICA
GUTIERREZ,

        Defendants-Appellees.

No.   15-55231

D.C. No.
8:14-cv-00665-CBM-SH

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted February 7, 2017
Pasadena, California

Before: THOMAS, Chief Judge, NGUYEN, Circuit Judge, and AMON,[**] District
Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Carol Bagley Amon, United States District Judge for
the Eastern District of New York, sitting by designation.

Allied Professionals Insurance Company ("APIC") appeals the district court's dismissal for lack of standing of its complaint against Dr. Michael Anglesey, his patient, Eliseo Gutierrez, and the patient's wife, Veronica Gutierrez ("Defendants"). We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand. Because the parties are familiar with the history of this case, we need not recount it here.

The district court erred by dismissing the case for lack of standing. APIC's complaint sought: (1) declaratory relief as to the rights and duties it owed to each of the Defendants; (2) rescission of the 2012 and 2013 insurance policies; and (3) compulsory arbitration of "all claims that Defendants may have against APIC in any way arising out of or relating to the 2013 Policy or to Dr. Anglesey's alleged malpractice." At oral argument, APIC clarified that the claims it sought to compel were only for "rescission," a declaration of the "assignability of the contract," and "coverage." Therefore, we need not decide whether APIC lacked standing to bring any claims other than those three identified by APIC at oral argument.

For an insurer to have Article III standing to pursue a declaratory judgment that a policy was not in effect, the insurer need only "allege it was threatened with injury by virtue of being held to an invalid policy." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998) (en banc). In addition, an

2

insurer has standing to seek declaratory relief in a coverage dispute with its insured. "Indeed, we have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Id.* (first citing *American Nat'l Fire Ins. v. Hungerford,* 53 F.3d 1012, 1015–16 (9th Cir. 1995); then citing *Am. States Ins. Co. v. Kearns,* 15 F.3d 142, 144 (9th Cir. 1994)).

Here, Anglesey tendered defense of the malpractice action asserted against him to APIC, and it denied coverage. This denial created an actual dispute between APIC and Anglesey as to whether coverage existed under the policy. APIC therefore possessed Article III standing to pursue its declaratory judgment action.[1] For the same reason, APIC had standing to bring a claim against Anglesey for judicial rescission of the insurance contract. *See Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir. 1998) (noting that federal courts have routinely identified a right to pursue insurance rescission).

Relatedly, because APIC had standing to bring claims for declaratory relief and rescission against Anglesey, APIC also had standing to seek to compel

[1] Indeed, we note that the insured and the underlying plaintiffs have filed a declaratory relief action in Washington. It would certainly be an odd result to hold that the insurer lacked standing to pursue the very declaratory relief sought by the insured and underlying plaintiffs.

Anglesey to arbitrate those two claims. *See* 9 U.S.C. § 4 (authorizing a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties"); *Int'l Bhd. of Elec. Workers, AFL-CIO Local 1245 v. Citizens Telecomms. Co. of Cal.*, 549 F.3d 781, 788 (9th Cir. 2008) (explaining that refusal to arbitrate is "an invasion of a legally protected interest" for purposes of Article III).

However, our conclusion that APIC had standing to bring claims for declaratory relief and rescission against *Anglesey* does not end the inquiry, because we must also consider whether APIC had standing to bring those claims against the *Gutierrezes,* as Anglesey's putative assignees. Defendants argue that the risk APIC would be sued by the Gutierrezes as Anglesey's assignees was not sufficiently imminent to create an injury in fact at the time APIC filed this case because, in the underlying tort case between Anglesey and the Gutierrezes, the settlement assigning Anglesey's claims against APIC to the Gutierrezes had not yet been approved by the court. However, we conclude that the risk of a lawsuit from the Gutierrezes was sufficiently imminent to satisfy Article III because, according to APIC's complaint, APIC and Anglesey had entered into and sought court approval of a settlement assigning his claims to the Gutierrezes, and Anglesey's

4

attorney had notified APIC that Defendants intended to execute a consent judgment whereby the Gutierrezes would agree to not execute the judgment against Anglesey, but instead seek to recover from APIC. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013)). Indeed, this risk of imminent harm came to fruition when Defendants' settlement was later reinstated and approved by the Washington court.

The parties assert other theories and highlight other issues involved in this case, as well as in the related litigation in Washington. However, we need not—and do not—reach any of those questions. The only question before us is whether the insurer had Article III standing, which it did.

**REVERSED AND REMANDED.**