**INSTITUTE FOR STUDIES ABROAD INC, Butler University, Plaintiffs,**

v.

**INTERNATIONAL STUDIES ABROAD INC, Defendant.**

**No. IP 00–1863–C T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 23, 2001.

John F. Prescott, Jr., Ice Miller, Indianapolis, IN, for plaintiffs.

Edward W. Harris, III, Mary T. Doherty, Sommer & Barnard, PC, Indianapolis, IN, for defendant.

## ENTRY ON DEFENDANT'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER

TINDER, District Judge.

This matter is currently before the court on Defendant's, International Studies Abroad, Inc. ("International"), motion for dismissal of this action or, in the alternative, motion to transfer this case to the Western District of Texas, Case No. A00CA–760–SS, where Plaintiffs in this suit, Institute for Study Abroad, Inc. ("Institute"), and Butler University ("Butler") (collectively "Plaintiffs"), are defendants in an action brought by International that raises the same issues as does Plaintiffs' Complaint here.

### Factual and Procedural History [1]

Institute and International are competitors in the international studies programs and services business. In April 1998, International sued Plaintiffs in the Western District of Texas alleging that Plaintiffs use of the abbreviation "ISA" infringed upon International's trademark. Effective on September 10, 1998, Plaintiffs entered into an Agreement with International to resolve that pending dispute. (See Compl. ¶ 7.) That Agreement establishes certain permitted uses of the abbreviation "ISA" by Institute and Butler. (See *id.* ¶ 7, Ex. A.)

On or about October 6, 2000, counsel for International mailed to Plaintiffs a letter titled "NOTICE OF VIOLATION OF SEPTEMBER 10, 1998 AGREEMENT" which stated in part: "This notice is given pursuant to Paragraphs 4 and 5 of the Agreement.... Pursuant to the terms of the Agreement, you are given 30 days to comply with this demand. If you fail to comply, [International] will have no choice but to file a lawsuit to enforce the Agreement and its other trademark rights." (See *id.* ¶ 11, Ex. C.) Paragraphs 4 and 5 of the Agreement provide in pertinent part:

4. In the event that International becomes aware of Institute's or Butler's failure to comply with the terms and conditions of this Agreement, it may, but is not obligated to, give written notice to the non-complying party stating with specificity the non-complying reference to ISA along with details sufficient to allow the non-complying party to locate and remedy the noncomplying reference to ISA....

5. The written notice and opportunity to cure any alleged breach of this

---

1. Any facts mentioned in this section are not disputed.

Agreement provided for in Paragraph 4 above shall be a condition precedent to any claim or action made or brought by International against Institute or Butler based in whole or in part on any alleged breach of this Agreement. Absent such notice and opportunity to cure, neither this Agreement nor any term hereof (including the fact of the existence of this Agreement), shall be admissible as evidence in any claim or action brought by International against Institute or Butler....

(Compl.Ex.A.) The thirty days would have expired on approximately November 5, 2000.

On November 2, 2000, before the thirty day period had expired, Plaintiffs sued International in Marion County, Indiana, Superior Court seeking declaratory relief pursuant to the Indiana Uniform Declaratory Judgment Act, IND.CODE § 34–14–1–1, *et seq.*, and Indiana Rule of Trial Procedure 57. On November 28, 2000, International sued Plaintiffs in the Western District of Texas, the same court in which the earlier lawsuit between these parties had been filed. Shortly thereafter, on December 1, 2000, International filed a notice of removal with this court effectively removing this case to federal court pursuant to 28 U.S.C. §§ 1441, 1446. On December 19, 2000, Plaintiffs moved for summary judgment. On January 2, 2001, this court entered an order suspending International's time for filing an Answer to Plaintiffs' Complaint until ten days after the court's Entry on the matter currently before it. And, finally, on January 8, 2001, this court extended the time for International to file its response to Plaintiffs' summary judgment motion until thirty days following the court's ruling on the motions discussed in this Entry. Thus, Plaintiffs' motion for summary judgment is pending before the court, but is not yet ripe for decision.

### Jurisdiction and Choice of Law

This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Institute is an Indiana not-for-profit corporation. (See Compl. ¶ 1.) Institute is thus an Indiana citizen for purposes of determining diversity. *See Ancho v. Pentek Corp.*, 157 F.3d 512, 514 n. 5 (7th Cir.1998) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 529 (7th Cir.1985) ("For purposes of federal diversity jurisdiction, a corporation is (with an immaterial exception) a citizen both of the state (or states) in which it is incorporated and the state in which it has its principal place of business.") (citing 28 U.S.C. § 1332(c))). Butler is an Indiana not-for-profit corporation, (see Compl. ¶ 2.), and is also an Indiana citizen for diversity purposes, *see Ancho*, 157 F.3d at 514 n. 5. International is a Texas corporation with its principal place of business in Texas, (see Notice of Removal ¶ 3.c.), and is thus a citizen of Texas, *see Ancho*, 157 F.3d at 514 n. 5.[2] Finally, the amount in controversy exceeds the sum of seventy-five thousands dollars. *See* 28 U.S.C. § 1332(a).

The federal, rather than the state, Declaratory Judgment Act controls this litigation, despite the fact that this litigation was brought pursuant to Indiana statute and an Indiana trial rule. It is well established that "[u]nder the *Erie* doctrine [*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ], federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). The federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201, is a procedural statute that creates no substantive rights.[3] *See Boura-*

---

**2.** International does not contest personal jurisdiction.

**3.** The Declaratory Judgment Act provides:

zak v. N. River Ins. Co., 379 F.2d 530, 533 (7th Cir.1967) (" 'The Declaratory Judgment Act created no new rights, but rather created a new remedy with which to adjudicate existing rights.' ") (quoting *Walker Processing Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir.1966)); *Household Fin. Servs., Inc. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *2 (N.D.Ill. Sept.27, 1999) ("The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute.") (citing *Powers v. United States*, 218 F.2d 828, 829 (7th Cir.1954)). Likewise, the Indiana Declaratory Judgment Act and Indiana Rule of Trial Procedure 57 are procedural rules which do not create any substantive right. *Cf. Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill.App.3d 151, 146 Ill.Dec. 705, 558 N.E.2d 668, 671 (1990) ("The declaratory judgment procedure does not create substantive rights or duties but merely affords a new, additional, and cumulative procedural method for their judicial determination."); *see also* IND.CODE § 34–14–1–15 ("This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."). Accordingly, the federal Declaratory Judgment Act is applicable to the matter before this court. *See Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939 (7th Cir. 1983) ("[T]he amended complaint does not mention the Declaratory Judgment Act but instead asks for a declaratory judgment under the Illinois Civil Practice Act, which is inapplicable to suits in federal court.").

### Motion to Dismiss [4]

■ International requests that this court decline to hear this case on the ground that it was filed only in anticipation of International's suit against Plaintiffs in Texas. The matter filed in Texas raises the same issues that are raised here, and International submits that it is the natural plaintiff to those issues. Plaintiffs respond that the first-to-file rule should be followed and, therefore, this case should not be dismissed.

"It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir.1987) (citations omitted); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (holding that declaratory judgment remedies are discretionary) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "[B]ecause the issuance of a declaratory judgment is discretionary, a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case will be allowed to proceed in the usual way." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10

In a case of actual controversy within its jurisdiction, [with certain exceptions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

4. Although titled as a motion to dismiss, International's motion is not a motion to dismiss in the Rule 12(b) sense. *See* FED.R.CIV.P. 12(b). International is actually requesting that this court exercise its discretion under 28 U.S.C. § 2201 and decline to hear this declaratory judgment action.

F.3d 425, 431 (7th Cir.1993) (citing *Tempco Elec.*, 819 F.2d at 749–50) (internal citation omitted).

In deciding whether to exercise its discretion to hear this declaratory judgment action, the court considers the Seventh Circuit's opinion in *Tempco Electric*, 819 F.2d 746, to be very instructive here. The facts of that case are materially similar to the facts of this case. There, Omega notified Tempco by letter that Tempco must cease illegal use of Omega's trademark. *See id.* at 747. In the letter, Omega demanded a response within ten days and threatened a lawsuit if Tempco failed to respond. *See id.* After eight days, and no response from Tempco, Omega sent another letter reiterating the demand. *See id.* This time, Tempco responded to the letter and declined to comply with the demand. *See id.* Shortly thereafter, Omega notified Tempco that it had no alternative but to file a lawsuit to protect its interests. *See id.* On the very day that it was so notified, Tempco filed a declaratory judgment action in the Northern District of Illinois. *See id.* Four days after the declaratory judgment action was filed, Omega filed its infringement action in Connecticut. *See id.* Omega thereafter moved to dismiss the action filed in Illinois on the grounds that the two actions involved the same facts, parties and issues. *See id.* The district court granted Omega's motion and the Seventh Circuit affirmed, opining, "Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Id.* at 746, 749.

In that case, like in the present case, a declaratory judgment served no useful purpose and was, thus, properly denied. *See id.* at 749. The Seventh Circuit recognized that the purposes of a declaratory judgment action are "to clarify and settle the legal relations at issue and to termi-nate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quotation omitted). The court continued:

> A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action. Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

*Id.*

As in *Tempco Electric*, "[t]his suit is of the first type (or, more accurately, was until [International] filed suit)." *Id.* International has alleged (as is evident by its October 2000 notice and its suit in Texas) that Plaintiffs have already engaged in the illegal behavior and continue to do so. There is no dispute that International's right, if any, to coercive relief has accrued. "In such circumstances, a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id.* However, like Omega in *Tempco Electric*, International has not engaged in such conduct. International properly and timely filed suit in Texas to enforce its rights under the Agreement. "Thus, a declaratory judgment would serve no useful purpose and [is] properly denied." *Id.* (citing *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir.1980); *Cunningham Bros. v. Bail*, 407 F.2d 1165, 1169 (7th Cir.1969)).

In *Tempco Electric*, the Seventh Circuit discussed in detail the first-to-file rule

which Plaintiffs rely heavily upon here. There, the court held, "[T]he mere fact that Tempco filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule." *Id.* at 749–50 (citations omitted). Furthermore, the court declined to adopt the rule in that case, opining, "As we have noted before, 'The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.'" *Id.* 750 (quoting *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939)). "The federal declaratory judgment is not a prize to the winner of the race to the courthouse." *Id.* (quotation omitted).

For these reasons, this court refuses Plaintiffs' invitation to rigidly apply the first-to-file rule in this case. From the submissions to this court, it is clear that Plaintiffs filed the declaratory judgment action only to avoid litigating this case in Texas. In a letter dated November 3, 2000, from Plaintiffs' counsel to International, Plaintiffs' counsel wrote, "As we are unwilling to participate in further meritless litigation in the state of Texas, which you promised would be filed, we have instead filed our Complaint for Declaratory Judgment on November 2, 2000. . . ." (James McClendon Aff. ¶ 6, Ex. 4.) Also, in their Brief in Opposition to International's motion, Plaintiffs admit, "As to wishing to avoid litigation in Texas, of course the plaintiffs preferred not to be hauled down to Texas on defendant's specious claims; it would have been irrational for them to have any other view." (Pls. Br. in Opp'n

at 9.) The court is fully aware that most, if not all, defendants would prefer not to have been sued. However, that reason alone does not permit defendants to race to the courthouse seeking declaratory judgment to avoid litigation in a forum not of their choosing. It is axiomatic that the choice of forum rightly belongs to the plaintiff. Here, International is the natural plaintiff to prosecute the violations of the Agreement which it alleges have occurred, as Plaintiffs are the alleged wrongdoers. This is exactly the type of preemptive strike that should not be condoned. *See, e.g., Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F.Supp.2d 912, 915 (N.D.Ind.2000) (recognizing that since *Tempco Electric*, courts in the Seventh Circuit have recognized "two policy arguments supporting the dismissal of a declaratory action brought solely in anticipation of an infringement suit": (1) "allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum", and (2) "prohibiting a 'race to the courthouse,' encourages settlement and discourages costly duplicate litigation") (quotations omitted). Plaintiffs were aware that under the terms of the Agreement, International could not practically file suit until giving Plaintiffs thirty days to cure their infringing use of International's trademark. International did in fact notify Plaintiffs of its intent to initiate litigation if Plaintiffs failed to cure, but before the thirty day cure period expired, Plaintiffs filed this declaratory action because they were "unwilling to participate in further meritless litigation in the state of Texas[.]" (McClendon Aff. ¶ 6, Ex. 4.) [5]

---

**5.** The court notes that Plaintiffs spend a great deal of time arguing that International's charges are wholly without merit. To that end, as mentioned above, Plaintiffs have already filed a motion for summary judgment. If International's charges are as meritless as Plaintiffs submit (an issue upon which this court expresses no opinion), the court sees no reason that Plaintiffs could not file their summary judgment action in the case filed in Texas thus avoiding protracted and costly litigation there. Moreover, Federal Rule of Civil Procedure 11, aimed at frivolous litigation, to which Plaintiffs refer, applies in district

While failing to distinguish, or even mention *Tempco Electric*, Plaintiffs rely heavily on the district court's unpublished opinion in *Applexion S.A. v. Amalgamated Sugar Co.*, No. 95 C 858, 1995 WL 404843 (N.D. Ill.1995 July 7, 1995). That opinion, however, does not support Plaintiffs' position and is easily distinguishable from the present matter. In *Applexion*, the plaintiffs sought a declaratory judgement that the defendant's patent was invalid, unenforceable and had not been infringed by the plaintiffs. *See id.* at *1. After the defendant filed suit in the District of Utah alleging that the plaintiffs had infringed the same patent at a different facility, the plaintiffs moved to enjoin the defendant from prosecuting that action. *See id.* The court granted the injunction after opining that, "The general rule is that the first federal court to obtain jurisdiction has the discretionary power to enjoin its defendant from prosecuting (or initiating) a separate suit involving the same essential issues against the plaintiff in another court, thereby forcing the defendant either to litigate its claim as a counterclaim or abandon it." *Id.* at *2 (citations omitted). However, the court appropriately recognized that the presumption was rebutted when a special circumstance, including "a showing that the plaintiff in the first-filed action raced to the courthouse to avoid litigating in another forum," "mitigates in favor of proceeding with the later suit instead of the first-filed action." *Id.* at *2 (citations omitted). Such is the case here. As discussed above, there is clear evidence from which to conclude that Plaintiffs filed this current action solely in an effort to avoid litigation in Texas. Therefore, to the extent that the first-to-file presumption recognized in *Applexion* is applicable here, International has successfully rebutted that presumption and, accordingly, the fact that Plaintiffs were the first to file is not a

persuasive reason for this court to hear this declaratory judgment action.

Plaintiffs also cite the Seventh Circuit's opinion in *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir.1994), which deserves comment here; although, that case, like *Applexion*, is easily distinguishable from this current case. In *NUCOR*, the Seventh Circuit affirmed the district's court decision to hear the merits of NUCOR's declaratory judgment claim. *See id.* at 577–79. The underlying facts of that case are similar to the facts here. There, Aceros sent a "notice letter" threatening litigation in Texas if NUCOR failed to pay, within sixty days, a substantial amount in damages for breaching a contract. *Id.* at 575. Before expiration of the sixty days, NUCOR filed a declaratory judgment action in the Southern District of Indiana. *See id.* at 578. Critically, however, when the district court denied Aceros' motion to dismiss, Aceros had yet to file an action in another court. *See id.* In fact, Aceros waited eight months after the filing of the declaratory judgment action before filing a state court action. *See id.* at 579. This delay led the Seventh Circuit to conclude, "There simply was no race to the courthouse." *Id.* In the present case, as discussed above, there clearly was a race to the courthouse and, thus *NUCOR* is not applicable here.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. Accordingly, the court will not address Defendant's motion to transfer, including engaging in a discussion regarding the balance of convenience to the parties and witnesses, nor will it address Plaintiffs' outstanding motion for summary judgment. A final judgment consistent with this En-

---

courts in the Western District of Texas as well as it does here.

try and in favor of Defendant will be entered forthwith.

ALL OF WHICH IS ORDERED this 23rd day of July 2001.